United States District Court
Southern District of Texas
**ENTERED**
March 18, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BUNKER SAWMILL LLC, *et al*, | § | |
|     *Plaintiffs/Counter-Defendants,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:22-cv-00457 |
| | § | |
| | § | |
| ESTATE OF SHEILA ALLGOR, *et al*, | § | |
|     *Defendants/Counter-Plaintiffs,* | § | |
| | § | |

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

After considering the evidence presented at trial and the arguments of counsel, this Court makes the following findings of fact and conclusions of law. All factual statements are to be considered findings of fact and all legal conclusions are to be considered conclusions of law regardless as to whether they are made in paragraph form or made in numbered statements.

### I.    Introduction

This case arises from a motor vehicle collision between a passenger vehicle and a tractor-trailer that occurred on May 20, 2021, near Nacogdoches, Texas. Sheila Allgor and Laura Badeaux, who were passengers in the vehicle, were killed in the accident. A minor child (also a passenger in the front seat of the vehicle) survived, as did the driver. David Nash ("Nash"), the operator of the tractor-trailer, was allegedly acting for Bunker Sawmill, LLC ("Bunker Sawmill") at the time of the crash.

This dispute revolves around the presuit settlement negotiations between counsel for Bunker Sawmill and Nash and counsel for the Estates of Sheila Allgor and Laura Badeaux ("The Estates") and the minor child. Bunker Sawmill and Nash—the Plaintiffs in the instant case—assert that a binding settlement agreement was reached between the parties in February 2022. The Estates

and the minor child ("Defendants") claim that no valid, enforceable settlement agreement was formed during the negotiations and that the underlying state court lawsuit related to the crash should proceed.[1]

## II.     Findings of Fact

1. A claim was made against Bunker Sawmill (and Nash) and therefore against Bunker Sawmill's insurance policy, issued by Eastern Atlantic Insurance Company ("Eastern Atlantic").

2. Attorney Robert Woods ("Woods") sent a letter of representation on behalf of the Estates and the minor child.

3. Attorneys Brian Coolidge ("Coolidge") and Campbell Roper ("Roper") were retained by Eastern Atlantic to represent Bunker Sawmill and Nash.

4. On or about November 16, 2021, Woods served a written settlement demand on behalf of the Estates and the minor child for $1,000,000.00 with a 14-day response deadline.

5. On or about November 23, 2021, Woods and Roper agreed to extend the response deadline for the November 16 demand to December 6, 2021.

6. On December 3, 2021, Woods and Roper agreed to further extend the response deadline for the November 16 demand to December 10, 2021.

7. On December 9, 2021, Coolidge sent an email to Woods that contained a counteroffer as follows: Sheila Allgor: $25,000; Laura Badeaux: $25,000; and minor child: $10,000 (a total of $60,000). The counteroffer had a 14-day response deadline.

---

[1] In February 2022, The Estates and the minor child sued Bunker Sawmill and David Nash for negligence and gross negligence in the 145th Judicial District of Nacogdoches County. Obviously, how and when, and even if that lawsuit proceeds is left to the discretion of the presiding judge of that court.

2

8. Later on December 9, 2021, Woods responded with an email presenting a counteroffer with reduced demands for each client: Sheila Allgor: $150,000; Laura Badeaux: $150,000; and minor child: $50,000 (a total of $350,000). Unlike before, there was no deadline specified in Woods' December 9 demand.

9. Between December 17 and December 22, Woods reached out to Coolidge and Roper twice via email to inquire as to a response to his December 9 demand.

10. In response, Roper stated that he would "probably not bother Mark [the Eastern Atlantic adjuster] again until after Christmas."

11. Woods responded to Roper over email that he would "…wait til the 7th, if I don't have a response…I know what that means!! Lol! You and Brian have a Merry Christmas…."

12. Woods and Coolidge conducted a phone call on the morning of February 4, 2022, in which Coolidge communicated the following counteroffer on behalf of Bunker Sawmill and Nash: Sheila Allgor: $75,000; Laura Badeaux: $75,000; and minor child: $25,000 (a total of $175,000).

13. Woods indicated to Coolidge that he would pass the information along to his clients.

14. At 10:12 A.M. on February 4, 2022, Woods emailed Randall Sorrells ("Sorrels"), co-counsel for the Estates and the minor child, and stated that Bunker Sawmill and Nash are "now offering $$75k for each deceased case and $50k for the minor…($200,000 from $60k)[.]"[2]

15. No response was made by Woods or Sorrels to this counteroffer until February 8, 2022.

16. On February 8, 2022, Sorrels called Coolidge and informed him that he had been retained to represent the Estates and the minor child and that he would be filing suit that week.

---

[2] Woods erred when he wrote "$50k for the minor" instead of $25,000, but did so because he sent the email while driving. The actual offer totaled $175,000.

17. After the Sorrels phone call, Coolidge sent a letter dated February 8, 2022 to Woods: (1) recounting that Sorrels called him and told him that the claimants would be filing suit that week, and (2) contending that the December 9, 2021 offer to settle $350,000 had not been withdrawn, and that he was accepting the December 9 offer on behalf of his clients.

18. On February 9, 2022, Sorrels filed suit on behalf of the Estates and the minor child in the 145th Judicial District Court of Nacogdoches County, Texas.

### III.   Conclusions of Law

1. Woods did not specify a deadline for acceptance of his December 9 demand, so the offer did not expire on January 7, 2022.

    a. An offeree's power of acceptance is terminated at the time specified in the offer. *Getty v. Perryman*, No. 14-17-00887-CV, 2019 WL 1768604, 2019 Tex. App. LEXIS 3226, at *9 (Tex. App.—Houston [14th Dist.] Apr. 23, 2019, no pet.) (mem. op) (citing *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 26 (Tex. App.—Houston [14th Dist.] 2005, no pet.)); Restatement (Second) of Contracts §41.

    b. In his email, Woods did not specify January 7 as the deadline for the December 9 demand. Indeed, Woods' email on December 22 stating: "Ok, I'll wait til the 7th, if I don't have a response. I know what that means!! Lol!" was not specific and did not constitute a termination date for the offer.

    c. Woods clearly knew how to appropriately express a termination date; in his November 16 *Stowers* demand letter, he wrote: "This offer expires at noon (12:00 p.m.) fourteen (14) days from your receipt of this demand."

    d. Woods' December 22 email did not impose a termination date.

2. The parties' course of dealing does not show that a reasonable time to accept a settlement offer was limited to 14 days (this is especially true given the offer was made just before the Christmas/New Years holiday season).

    a. An offer will lapse if it is not accepted within a "reasonable time." *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 26 (Tex. App.—Houston [14th Dist.] 2005, no pet.). "What is deemed a 'reasonable time' depends on all the circumstances existing when the offer and any attempted acceptance are made, including the nature of the proposed contract, the purposes of the parties, and the course of dealing between them." *Valencia v. Garza*, 765 S.W.2d 893, 897 (Tex. App.—San Antonio 1989, no writ) (emphasis added).

    b. Although Woods' November 16 letter and Coolidge's December 9, 2021 letter specified 14 days to respond before the offer was withdrawn, the Court finds that this does not establish a "course of dealing" such that the reasonable time to respond to Woods' December 22 email ("Ok, I'll wait til the 7th, if I don't have a response. I know what that means!! Lol!") would be limited to 14 days. Defendants point to only two letters with a 14-day expiration date, and Woods did not dispute in his testimony that his December 9 email did not include any expiration date. Accordingly, the parties had not established a clear "course of dealing" which would have limited a reasonable time for acceptance to 14 days.

3. Woods' December 9 demand/offer was not revoked by Sorrels' communication to Coolidge on February 8, 2022, that Defendants had decided to file suit.

    a. "Settlement agreements are contracts and are accordingly governed by contract law principles." *Angel v. Tauch*, 642 S.W.3d 481, 488 (Tex. 2022). "[A]n offer and an

acceptance are two indispensable elements of a binding and enforceable contract. *Id.* "But acceptance creates a binding contract only if the power of acceptance remains in the offeree. If an offeror revokes an offer before acceptance, the offeree's power of acceptance terminates." *Id.* Typically, a revocation will be communicated directly by the offeror to the offeree. *Id.* But even when there has been no direct communication of a revocation, an offer is revoked if the offeree receives reliable information that the offeror has acted inconsistent with an intention to enter into the proposed contract. *Id.*

    b. The Court finds that there was not evidence presented at the trial from which the Court could conclude that Sorrels' communication to Coolidge on February 8, 2022 that Defendants had decided to file suit was an act necessarily inconsistent with an intent to settle. Certainly, not every discussion by lawyers in which the contention is made that they intend to file a lawsuit constitutes implied revocation of a previous demand. Quite often it is merely a negotiating tactic. Indeed, whether actual intent or negotiating tactic, here it worked as such: Coolidge was willing to settle for twice his previous offer of $175,000. Coolidge's testimony did not demonstrate the exact language used by Sorrels in communicating Defendants' intent to sue. Sorrels, himself, may have been able to close this evidentiary gap, but he did not testify. As a result, this Court does not conclude that Woods' December 9 demand was revoked by inconsistent act.

4. Coolidge's communication on February 4, 2022 (offering $175,000 to settle the claims) constituted a counteroffer which terminated Defendants' December 9 demand.

a. A counteroffer terminates the right of a party to accept a previous offer. An offeree's power of acceptance is terminated by the making of a counteroffer unless the offeror has manifested a contrary intention. *Davis v. Tex. Farm Bureau Ins.*, 470 S.W.3d 97, 105 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *Thurmond v. Wieser*, 699 S.W.2d 680, 682 (Tex. App.—Waco 1985, no writ); Restatement (Second) Of Contracts § 39(2).

b. Coolidge, while not recounting his exact language, maintains that he never made an offer when talking with Woods on February 4, 2022. Woods unequivocally maintains that Coolidge made it clear that it was an offer (and, indeed, that Coolidge used the word "offer"). Although the language he used may have been imprecise, Defendants/Counter-Plaintiffs have established by a preponderance of the evidence that Coolidge's communication was a counteroffer because the Court credits Woods' testimony that Coolidge used the word "offer" when he communicated the new proposed settlement figures. This finding is supported by circumstantial evidence as well:

   i. At 10:12 A.M. on February 4, 2022, after the call with Coolidge, Woods emailed Sorrels and stated that Bunker Sawmill and Nash are "now offering $$75k for each deceased case and $50k for the minor…($200,000 from $60k)[.]"

   ii. Despite the fact that Coolidge maintains that he did not make a counteroffer on the February 4, 2022 phone call, he noted that he was being "vague" and "cagey" when communicating with Woods.

    c. The Court finds that Defendants/Counter-Plaintiffs have shown by a preponderance of the evidence that Coolidge's communication with Woods on February 4, 2022 constituted a counteroffer that terminated Plaintiffs' ability to accept Woods' December 9 demand.

    d. There was never a settlement of the controversy prior to the suit that was filed in Nacogdoches County.

## IV.   Evidence Objections

Plaintiffs object to the admissibility of emails between Mark Sprague ("Sprague"), the insurance adjuster at Eastern Atlantic assigned to the relevant claim, and Coolidge (the attorney for Bunker Sawmill and Nash) during the settlement negotiations on privilege grounds. Additionally, Plaintiffs object to certain portions of Sprague's deposition testimony as invading attorney-client privilege. The Court has found that there was not an enforceable settlement agreement based on the parties' communications and has done so without relying upon any objected-to evidence. Therefore the Court has made this conclusion as if it had sustained Plaintiffs' objections. Nevertheless, had the Court considered the objected-to emails and deposition testimony, the evidence would have been clear and convincing that Coolidge's communication to Woods on February 4, 2022 constituted a counteroffer. Indeed, the following evidence would further support the Court's finding:

- On the morning of February 4, 2022, Coolidge sent an email to Mark Sprague (the insurance adjuster) stating that he "communicated the **offer**." (emphasis added). He closed the email with: "I will update you when I hear back from Sorrels."

- On February 8, 2022, Coolidge wrote an email to Sprague where he provided "the history of negotiations" and described the February 4, 2022 exchange with Woods as a "Verbal **Offer**." (emphasis added).

Given the fact that the Court did not consider the above-referenced evidence when determining that Coolidge's communication constituted a counteroffer, the Court need not rule on Plaintiffs' objections to this evidence.

## V.  Conclusion

Plaintiffs first asserted a claim for breach of contract under Texas law, claiming that Defendants breached an enforceable settlement agreement with Plaintiffs "by…declaring that a lawsuit has been filed for claims resolved in the settlement." (Doc. No. 1 at 4). For the reasons specified above, the Court finds for the Defendants—no contract existed and, accordingly, there was no breach of contract.

Plaintiffs also sought a declaratory judgment both under the Texas Declaratory Judgment Act and the Federal Declaratory Judgment Act declaring, among other things, that "Plaintiffs' acceptance of Defendants' offer created a valid and enforceable contract." (*Id.* at 6). Defendants' Answer includes a counterclaim seeking a declaratory judgment under the Texas Declaratory Judgment Act declaring that no settlement agreement was formed. (Doc. No. 14 at 19).

"The Texas Declaratory Judgment Act is a procedural mechanism that is inapplicable in federal court." *Piazzo v. Allstate Indem. Co.*, 601 F. Supp. 3d 189 (S.D. Tex. 2022) (quoting *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998)). "In a diversity case such as this one, any declaratory judgment action must be brought under the Federal Declaratory Judgment Act." *Id.* This Court accordingly converts each party's claim for declaratory judgment under the

Texas Declaratory Judgment Act into claims brought under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.[3]

Based on the above-referenced findings of fact and conclusions of law, the Court finds for Defendants/Counter-Plaintiffs. A separate take-nothing judgment will be entered pursuant to the Federal Rules of Civil Procedure.

Signed at Houston, Texas, on this the 15th day of March 2024.

Andrew S. Hanen
United States District Judge

---

[3] Both the Plaintiffs/Counter-Defendants and Defendants/Counter-Plaintiffs originally brought claims pursuant to the Texas Declaratory Judgment Act (which would have included the possibility of an attorney fee award), but the Court need not address that issue for two reasons. First, only the Federal Declaratory Judgment act is at issue here. *See* 28 U.S.C. §§ 2201, 2202. Secondly, the parties stipulated on the record that neither side will be seeking attorney's fees in this case.